IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-00693-RBJ

JULIE A. SHRANK,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the Court on review of the Commissioner's decision that denied plaintiff Julie Shrank's application for Supplemental Security Income for disability benefits pursuant to Title XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). This dispute became ripe for decision by this Court upon the filing of plaintiff's Reply Brief on September 2, 2011. The Court apologizes to the parties for the delay in resolving the case.

**Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2007). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

**Facts**

Ms. Shrank was born in 1970. She worked as a registered nurse until 2007. She filed for disability benefits on September 11, 2007 with an alleged onset date of disability of July 15, 2007. In her application, Ms. Shrank listed several impairments including depression, bipolar disorder, drug abuse and alcoholism, insomnia, and chronic back pain. A hearing was held June 23, 2009. The ALJ determined that Ms. Shrank suffered from three severe impairments: depression, bipolar disorder, and degenerative disc disease of the lumbar spine.

<u>Back Pain</u>

Ms. Shrank suffered from back pain prior to her onset of disability. In 2006 she underwent a micro-discectomy operation to relieve her back pain and to enable her to resume work as a nurse. R. 306. Ms. Shrank reported that the surgery relieved most of her back pain, and she was able to walk well. R. 434, 435, 775. However, in July 2008, Ms. Shrank fell out of a hammock while camping and landed on her back. R. 619. She experienced some immediate soreness, and about two weeks later she started experiencing a great deal of lower back pain. *Id.* Following her fall, Ms. Shrank suffered from lower back pain radiating down her leg. R. 619. Doctors determined that Ms. Shrank suffered from a herniated disc, degeneration of her lumbar spine that impinged on a nerve, and mild radiculopathy. R. 788.

At first Ms. Shrank was prescribed Vicodin, but she was denied further refills when her doctor learned of her history of medication abuse. Ms. Shrank was able to take Gabapentin, a

2

non-narcotic medication to help with her neuropathic pain, and she also received steroid injections and physical therapy.  R. 675-678.

      Mental Illness

In addition to back pain, Ms. Shrank suffered from severe depression.  In early 2007 she was doing well.  Her treating psychiatrist, Dr. Spadoni, reported that her mental status was "quite benign with good range of affect, and cognitive function and positive motivation."  R. 401. However, in March 2007 Ms. Shrank's depression worsened, and she was prescribed Wellbutrin. R. 350, 400.  Ms. Shrank did not react well to the changes in her medication, and she agreed to be admitted to the hospital on March 28, 2007.  R. 350.  She was discharged on April 2, 2007, and she described her mood as being "much better."  R. 348.

Ms. Shrank was admitted to the hospital three more times in 2007.  She was admitted on April 5, 2007 complaining of depression and feeling overwhelmed after being confronted with a stressful situation at work.  R. 334, 342.  After a week of inpatient services, Ms. Shrank reported improvements in her mood.  Although she still felt some anxiety about returning to work, she did feel that she had enhanced coping skills and was optimistic about continuing her treatment as an outpatient.  *Id.*  During this visit she was diagnosed with bipolar disorder, but her psychiatrist disagreed.

On May 31, 2007 Ms. Shrank was again admitted to the hospital, this time with suicidal thoughts.  R. 339.  She was discharged on June 3, 2007, and in her discharge notes Dr. Spadoni explained that "stresses at work, stresses associated with her Alcoholics Anonymous (AA) step work, stresses associated with needing to find a new sponsor, and finally, and perhaps most significantly, stresses associated with her decision that she probably would do better out of the nursing field, contributed to a rather severe crisis response in a therapy session at the Regal

Center and at that time, she reported feeling suicidal with thoughts and plans and was admitted." R. 334. Ms. Shrank left the hospital feeling safe and optimistic. R. 335.

Ms. Shrank was again admitted to the hospital on July 23, 2007 after admitting to her psychiatrist that she had tried to commit suicide. R. 330. Although still sober, she was also struggling from alcohol cravings. R. 330. After changes to her medication, Ms. Shrank was discharged on July 27, 2007. R. 327-28.

In December 2007 Ms. Shrank admitted to her primary care physician, Dr. Reed, that she had relapsed with alcohol and Vicodin, but that she planned to attend rehab. R. 767. In April 2008 Ms. Shrank again saw Dr. Spadoni. At that appointment she reported that she had regained sobriety but felt that she was not maintaining stability and asked to go back on lithium. R. 610. Dr. Spadoni noted that her mental status was "quite benign with good range of affect, and cognitive function and positive motivation." *Id.* He prescribed lithium for Ms. Shrank, because it had been effective in the past. *Id.* In May 2008 Dr. Spadoni reported that Ms. Shrank was functioning much better. R. 609. However, the doctor did note that he believed that if she returned to work as a nurse, Ms. Shrank would begin abusing alcohol again. *Id.*

Ms. Shrank did not see Dr. Spadoni again until January 2009 when she reported that she was doing well, but that her Zoloft was not working as well as it once had. R. 924. Dr. Spadoni changed her prescription to Pristiq. *Id.* In June 2008 Ms. Shrank was again admitted to the hospital because of suicidal thoughts. R. 943. After adjusting her medication, Ms. Shrank was discharged three days later when she was no longer suicidal. *Id.* Ms. Shrank was admitted again on June 9, 2008. *Id.* She had admitted to her therapist that she was using Vicodin again in violation of her contract as a recovering addict. *Id.* Ms. Shrank indicated that she would not be able to stop using Vicodin without being hospitalized, because she would become suicidal. *Id.*

4

After detoxing, she was discharged three days later. R. 940. Ms. Shrank has not been hospitalized since June 2008.

Administrative Law Judge's Opinion

In her opinion, ALJ Kathryn Burgchardt applied the five step evaluation process that the Social Security Administration established for determining if someone is disabled (20 CFR 404.1520(a)). To be eligible for disability benefits, the ALJ must determine that a claimant is not engaging in substantial gainful activity. At the first step of the process the ALJ determined that Ms. Shrank was not engaging in substantial gainful activity. R. 64.

At the second step of the process the ALJ must determine if the claimant has a medically determinable ailment that is "severe" or a combination of impairments that are "severe," meaning that they significantly limit an individual's ability to perform basic work activities. *Id.* The ALJ determined that Ms. Shrank had several severe impairments: depression, bipolar disorder, and degenerative disc disease of the lumbar spine. R. 65. The ALJ explained that although Ms. Shrank's mental status significantly improved during the times she was hospitalized, she required ongoing care for depressive symptoms. *Id.* The ALJ determined that although there were conflicting opinions about whether Ms. Shrank suffered from bipolar disorder, under the evidence it was still a severe impairment. *Id.* Although Ms. Shrank also suffers from diabetes, the ALJ determined that this was not a severe impairment because she did not experience any organ damage, peripheral neuropathy, visual loss, or more than minimal ongoing functional limitations attributable to diabetes. R. 66.

At step three of the process that ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* Under this analysis the ALJ

5

determined that Ms. Shrank's impairments did not meet or medically equal one of the conditions listed. *Id.* The ALJ analyzed Ms. Shrank's impairments under the criteria for orthopedic impairments under section 1.04 and her mental impairments under section 12.04. *Id.*

Next, the ALJ must determine the claimant's residual functional capacity which is an individual's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. R. 64. At step four the ALJ must then use the residual functional capacity to determine whether the claimant is able to perform the requirements of her last relevant work. *Id.* The ALJ determined that Ms. Shrank had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), while only occasionally climbing, stooping, crouching, kneeling, or crawling; performing simple unskilled work at best, involving one, two, or three step instructions; and involving only minimal contact with the general public. R. 67. Based upon this residual functional capacity the ALJ determined that Ms. Shrank did not have the residual functional capacity to perform her last relevant work as a nurse. R. 71.

Because Ms. Shrank was not able to perform her last relevant work, the analysis proceeds to step five. Step five requires the ALJ to determine whether the claimant is able to do any other work considering her residual functional capacity, her age, education, and work experience. R. 65. In order to support a finding that the individual is not disabled at this step, the Social Security Administration must prove that other work exists in significant numbers in the national economy that the claimant is able to perform. *Id.* A vocational expert testified that, despite Ms. Shrank's limitations, based on her age, education, and work experience there was work available to Ms. Shrank in the national economy. R. 72. The vocational expert listed office helper, house cleaner, and mail clerk as examples of available jobs that Ms. Shrank would be able to perform. Accordingly, the ALJ determined that Ms. Shrank was not disabled. R.73.

**Conclusions**

Ms. Shrank appeals the ALJ's denial of benefits arguing that it is in contradiction to the substantial medical evidence in the record. Specifically, she argues that ALJ Burgchardt failed to evaluate the evidence properly at step three and failed to properly consider the medical opinion of Dr. Reed at step five of the sequential analysis.

<u>Step Three</u>

At step three of the five step sequential process the ALJ must determine whether the claimant's impairments meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Ms. Shrank argues that the ALJ erroneously concluded that her severe impairments did not meet or medically equal one of the listed impairments. Specifically, Ms. Shrank argues that she met the impairments listed in 1.04A Disorders of the Spine, or in the alternative, her back troubles combined with her depression and diabetes were medically equivalent to the conditions listed in 1.04A. Ms. Shrank does not challenge the ALJ's determination that her depression and bipolar disorder do not meet the criteria listed in 12.04.

Section 1.04A requires "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." The ALJ determined that there was no evidence that Ms. Shrank experienced muscle atrophy with associated sensory or reflex loss. R.66. The ALJ also noted that no source had positively identified the presence of nerve root impingement and EMG results indicated only mild radiculopathy. *Id.*

Ms. Shrank points to numerous sections of her medical records to show that the ALJ erred. However, in all of the passages that Ms. Shrank cites, there is no evidence of muscle atrophy accompanied by sensory or reflex loss. On the contrary, a medical record from 2008 says "[n]o misalignment, asymmetry, crepitation, defects, tenderness, masses, effusions, decreased range of motion, instability, atrophy or abnormal strength in the head, neck, spine, ribs, pelvis or extremities." R. 742.

"For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis original). Because Ms. Shrank has not shown that there was "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," it was not error for the ALJ to determine that Ms. Shrank's back impairments did not meet the listing in 1.04A.

Ms. Shrank also did not meet the listing in 1.04C which requires that a claimant be unable to ambulate effectively. Although Ms. Shrank does not specifically argue that the ALJ erred in determining that she did not meet the listing in 1.04C, she does cite to medical reports about her inability to walk. The record to which Ms. Shrank cites is not a medical doctor's opinion. Rather, it is a notation that Ms. Shrank reported trouble with walking. R. 740. Throughout the record there are notes confirming Ms. Shrank's ability to ambulate effectively. *See, e.g.,* R. 53, 672. Therefore, it was not error for the ALJ to determine that Ms. Shrank did not meet the criteria of 1.04C.

Ms. Shrank also argues that the ALJ found that Ms. Shrank's only physical impairment was degenerative disc disease of the lumbar spine and that this was in error because she suffered

8

from several severe spine disorders listed in Section 1.04, including a broad based annular bulge with ligament hypertrophy and facet anthropathy and severe canal stenosis. However, the ALJ's analysis of Ms. Shrank's back impairments and the medical evidence was broad and did include degenerative changes with broad based bulging, hypertrophy, and central canal stenosis resulting in left-sided radiculopathy. R.66. The impairments that Ms. Shrank references are also covered under 1.04. As discussed above, Ms. Shrank did not provide evidence that she met the requirements of 1.04A or 1.04C. Accordingly, even if the ALJ were in error in limiting Ms. Shrank's severe impairment to degenerative disc disease of the lumbar spine, the substantial evidence still supports the ALJ's determination that the totality of Ms. Shrank's back impairments did not meet the criteria of 1.04.

In the alternative Ms. Shrank argues that her back impairments combined with her depression, bipolar disorder, and diabetes medically equaled 1.04A. "For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to *all* the criteria for the one most similar list impairment. A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as the listed impairment." *Zebley*, 493 U.S. at 531. (internal citations omitted)(emphasis original). Under this standard, Ms. Shrank would need to offer evidence that the combination of her back impairments with her diabetes, depression, and bipolar disorder equal in severity all of the criteria listed in 1.04A. Ms. Shrank provides many medical notes about the severity of her depression and bipolar disorder. However, she has not presented any evidence to explain how these other impairments in combination with the back impairments and diabetes equal the severity of the individual criteria for 1.04A. Ms. Shrank

points to no evidence suggesting that her diabetes and depression equal the severity of muscle atrophy with sensory or motor loss.

Accordingly, the ALJ did not err in determining that the combination of Ms. Shrank's impairments was not medically equivalent to the criteria listed in 1.04A. Rather, substantial evidence supported the ALJ's determination that Ms. Shrank's impairments did not meet or medically equal the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

<u>Medical Opinions at Step Five</u>

Ms. Shrank also argues that the ALJ failed to properly evaluate the medical opinions she relied on in completing a residual functional capacity assessment for step five of the sequential analysis. If an ALJ determines based on a claimant's residual functional capacity that she can no longer practice her past relevant work, the ALJ must consider whether the claimant can do any work considering her residual functional capacity, age, education, work, and experience. If the claimant is able to do other work, then she is not disabled. However, the burden then shifts to the Social Security Administration to show that other work exists in in significant numbers in the national economy that the claimant can perform. To complete the residual functional capacity for step five an ALJ relies on evidence in the record including medical opinions.

The ALJ determined that a 2008 report that Ms. Shrank's treating physician, Dr. Reed, prepared at Ms. Shrank's request should be given no weight. Treating physicians' opinions are generally entitled controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ must determine whether a physician's opinion is well supported by medically-acceptable clinical and laboratory diagnostic techniques and whether it is consistent with other evidence in the record. *Id.* If these two criteria are met, then the physician's opinion is entitled to controlling weight. *Id.* In this case, the ALJ determined that Dr. Reed's opinion was not

consistent with other evidence in the record. In her March 2008 report, Dr. Reed's opined that Ms. Shrank's physical pain would preclude her from sitting, standing, and walking sufficiently to complete a routine eight hour work day, would affect her concentration, and would cause her to be absent from work three to four days each month. R. 70-71. However, the ALJ noted that this report was completed before Ms. Shrank re-injured her back in the summer of 2008. There were numerous citations in the record that after her surgery in 2006 until she re-injured her back in July 2008 Ms. Shrank had experienced almost a complete resolution of her symptoms. R. 434, 435, 775. Ms. Shrank had reported to Dr. Reed in 2006 that, although she was still experiencing some pain, her surgery had resolved most of her nerve pain. R. 70. Also, in August 2008 Ms. Shrank again told Dr. Reed that her surgery had almost completely resolved her symptoms. *Id.* Therefore, Dr. Reed's opinion was inconsistent not only with other evidence in the record but her own medical notes.

Because deference is given to treating physician's opinions, other evidence is weighted "to see if it outweighs the treating physician's report, not the other way around." *Goatcher v. U.S. Department of Health and Human Serv's,* 52 F.3d 288, 290 (10th Cir. 1995). In this case, Ms. Shrank's own reports that her back symptoms were almost completely relieved following her surgery outweighs Dr. Reed's 2008 report that was completed at claimant's request as part of her application for disability benefits. Accordingly, Dr. Reed's opinion was not entitled to controlling weight.

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighted using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." *Id.* (quoting *Watkins*, 350 F.3d at 1300). The factors to be considered are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (quoting *Watkins,* 350 F.3d at 1301). If an ALJ rejects the opinions of a treating physician entirely, she must give "specific, legitimate reasons" for doing so. *Watkins,* 350 F.3d at 1301.

Ms. Shrank argues that the ALJ's opinion was in error because she did not analyze the six factors listed above. In *Marshall v. Astrue* the Tenth Circuit examined a similar issue when an ALJ determined that a treating physician's report was inconsistent with the entire medical record but did not go through a factor by factor analysis in determining that it should be accorded no weight. 315 Fed. App'x 757 (10th Cir. 2009). Instead, the ALJ in *Marshall* focused only on the consistency between the treating physician's opinion and the entire medical record. *Id.* The court determined that "[a]lthough the ALJ's discussion could and should have been more thorough, we conclude that he stated adequate reasons for rejecting [the treating physician's] opinion." *Id.* at 761. Similarly, in this case it would have been more helpful if the ALJ had completed a more thorough factor by factor analysis. However, like the medical opinion in *Marshall*, Dr. Reed's opinion was "brief, conclusory, and unsupported by medical evidence." *Id.* The ALJ gave sufficient reasons for rejecting Dr. Reed's opinion and, therefore, did not err in assigning no weight to the opinion.

Next, Ms. Shrank argues that because the ALJ assigned no weight to Dr. Reed's opinion, there was not adequate information available for the ALJ to complete the residual functional capacity assessment. Ms. Shark suggests that there was a clear need for a new physical consultative examination to supplement the record. This undervalues the amount of medical evidence in the record that the ALJ had before her. Although the ALJ gave no weight to Dr.

12

Reed's March 2008 opinion, there were hundreds of pages of medical reports relaying Ms. Shrank's symptoms and diagnoses. The ALJ discussed the objective medical evidence in the record on which she relied in coming to her conclusion on Ms. Shrank's residual functional capacity. Ms. Shrank also testified that she was able to cook, do laundry and dishes, perform light house work, drive, shop, and go to the movies. R. 106-08, 111, 116-17. The ALJ explained that she relied on all of this information in determining Ms. Shrank's residual functional capacity.

While an additional medical consultative opinion may have been helpful, it was not error for the ALJ to determine Ms. Shrank's residual functional capacity without the additional opinion. Based upon the record as a whole, there was substantial evidence to support the ALJ's determination that Ms. Shrank could perform light work while only occasionally stooping, crouching, kneeling, or crawling; performing simple, unskilled work involving one, two, or three step instructions and involving only minimal contact with the general public. Therefore, the ALJ did not error at step five of the sequential analysis.

**Order**

The Commissioner's decision is affirmed.

DATED this 2nd day of January, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge